ELIZA O. BRIMMER *vs.* WILLIAM D. SOHIER, Executor.

Where the words used in a will, if construed according to their technical force and meaning, would defeat the obvious intention of the testator, such a construction is not to be adopted.

Where a testator, by a residuary clause, devised the residue of his real and personal estate " to the survivors of his brother and sisters," naming them ; — it was held, that this was a devise of an estate in common to all the devisees who should survive the testator, with the right of possession immediately after his decease, and not a devise upon a contingency, to the two out of the three persons named who might survive the third.

The effect of a codicil, ratifying, confirming, and republishing a will, is to give the same force to the will, as if it had been written, executed, and published, at the date of the codicil.

Where a will was made before, and a codicil added after, the passing of the revised statutes, it was held. that the will might operate upon after purchased real estate, in the same manner, as if it had originally been made at the date of the codicil.

Under the Rev. Sts. c. 62, § 3 which provide for the passing, by will, of after purchased real estate, " if such shall clearly and manifestly appear, by the will, to have been the intention of the testator," it is not necessary, that the intention should be manifested by an express declaration ; but it is sufficient, if it can be inferred from the several provisions of the will ; and the true question seems to be, whether the testator intended to die testate as to all the property which he might leave, or whether he was content to die intestate as to a part, and to leave it to be distributed according to law.

Wherever there is a devise of the whole estate, or of all the residue of the estate, of a testator, — there being both real and personal estate upon which the will may operate, — an intention to give after acquired real estate may perhaps be justly inferred, unless there be some indication of a different intention to be found in the will.

THIS was a bill in equity, the nature of which sufficiently appears from the following statement of facts, upon which the cause was submitted.

On the 14th day of March, 1835, George W. Brimmer, Martin Brimmer, Mary Ann Brimmer, and the plaintiff, were the owners in fee of four undivided fifth parts of the wharf and flats in Boston, known as Brimmer's T ; the children of Susan Brimmer Inches owned the reversion of the other undivided fifth part, of which their father was and is tenant by the curtesy.

George W. Brimmer died in Italy, September 12th, 1838, having made his will, since duly proved and allowed, bearing date the 25th September, 1837, containing the following provisions :

" I bequeath all my real estate in Brewer, state of Maine, to the surviving children of my late sister Susan Inches, wife of Henderson Inches."

" To George Brimmer Sohier, son of William D. Sohier, I give two thousand dollars and the residue, unsold at my death, of my portion of real estate lying in Cambridgeport."

" The residue of my real and personal estate in Boston, North Carolina and elsewhere, I give to the survivors of my brother and sisters, Martin Brimmer, Eliza O. Brimmer and Mary Ann Brimmer."

At the time of George W. Brimmer's decease his brother and two sisters were living. His will was proved May 2d, 1839.

On the 18th day of October, 1839, Mary Ann Brimmer died in Paris, having made her will bearing date 14th March, 1835, together with a codicil bearing date 29th September, 1837, which will and codicil have since been duly proved and allowed, 16th March, 1840.

The will after sundry legacies contains the following provisions :

" One moiety of all the residue of my estate real, personal and mixed, wheresoever the same may be situated, I devise and bequeath unto my sister Eliza Oliver Brimmer, to hold during her natural life."

" All the residue of my estate I devise and bequeath unto my brothers, George Watson Brimmer and Martin Brimmer, their heirs and assigns forever, in case they both survive me, otherwise my will is that the brother who shall survive me shall take the whole and entire residue of my estate."

The codicil, bearing date 29th September, 1837, provides for certain legacies, republishes the will and confirms the same, but contains no provision affecting the title to the wharf and flats.

The heirs at law of Mary Ann Brimmer, at her decease, were her brother Martin Brimmer, her sister Eliza O. Brimmer, and the children of her deceased sister Susan B. Inches.

Martin Brimmer died on the 25th day of April, 1847

having made his will bearing date 31st July, 1840 ; which has since been proved and allowed.

By this will one moiety of the real and personal estate which belonged to him at his decease was given to Eliza O. Brimmer, for and during her life ; and there were provisions in the will, in reference to the residue and the other moiety, not necessary to be set forth in this case.

The will also contains this provision : " If my said sister shall be desirous of becoming the owner of my share, title and estate of, in and to that certain wharf and flats in the city of Boston called and known by the name of Brimmer's T, then I order and direct that the same shall be conveyed to her by the executor of this will, or such person as shall be administrator of my estate with this will annexed, upon being paid the amount of money at which my said share of said wharf and flats shall be appraised under the warrant of the court of probate and entered in the inventory of my estate."

" And said executor or administrator is directed and authorized so to convey my said share of said wharf and flats, and I declare that the deed of said executor or administrator shall effectually pass to the grantee therein named all the estate and share in said wharf and flats which I held or was entitled to at my decease.

" I declare this will shall operate upon real estate of which I shall be, as well as upon such as I am now, the owner."

Martin Brimmer, as above stated, owned one fifth of the wharf and flats in his own right, and whatever other portion thereof, he was at his decease entitled to, was devised under the wills of his brother George and his sister Mary Ann, or as one of the heirs at law of Mary Ann, if she left any portion of the wharf and flats undisposed of by her will, as the plaintiff contends she did.

The interest of the testator in the wharf and flats was estimated in the inventory of his estate to be six-fifteenth parts thereof in possession and two-fifteenth parts thereof in reversion, and its value was estimated at one hundred and

fourteen thousand three hundred and forty-eight dollars and eighty cents.

William D. Sohier, Esq. was duly appointed executor of the will of Martin Brimmer and notified the plaintiff, in writing, that he was ready and willing to convey to her the title of the testator in the wharf and flats, for the sum of one hundred and fourteen thousand three hundred and forty-eight dollars and eighty cents.

The plaintiff signified to the executor her desire and intent to avail herself of the provision in the will, and to purchase the title of the testator in the wharf and flats, whether the same might be more or less than set forth in the inventory ; and requested him to convey to her forty-four-ninetieth parts of the same, which she affirmed to be the whole interest of the testator therein, at his decease, at a price proportionate to that at which the testator's supposed interest and estate was valued in the inventory ; which the executor declined to do.

This bill was filed for the purpose of ascertaining the actual title of Martin Brimmer in the wharf and flats, at his decease, and obtaining a conveyance thereof.

The court is to decree the defendant, in his capacity of executor, to convey that portion of the wharf and flats to the plaintiff, of which Martin Brimmer died seized, upon payment of the price at which the same should be valued, according to the terms of his will.

The arguments in this cause were submitted in writing.

*W. Dehon*, for the plaintiff.

1. The first question is, what estate did Martin Brimmer take under the residuary clause of the will of George W. Brimmer. At the date of this will, and at the time of the testator's death, his brother Martin and his two sisters were living. The testator devised the residue of his estate, wheresoever situated, " to the survivors of his brother and sisters."

This language created a devise, upon a contingency, to the two out of the three persons named, who might survive the third. It was necessarily contingent who would be such

survivors.   The general rule is, that, in a devise to survivors, upon a contingency, the words of survivorship refer to, and take effect upon, the happening of the contingency.   2 Jarman on Wills, 651.

In this devise, the parties, who are to take, not only take upon a contingency, but they are to be such as sustain a certain character, that is, they must be survivors of the other ; and the rule is, that where property is given to those persons out of a class, who shall, at a future time, sustain a particular character, without a distinct gift being previously made to the whole class, so that the uncertain event forms a part of the original description of the devisees, the interest in such case is necessarily contingent, on account of the person ; for, until the particular character is attained, there is no one to answer the description.   2 Fearne C. R. (10th ed.) 136. This case seems to fall clearly within the rule.

If it should be objected, that, upon this construction, the estate would be left undisposed of, until the happening of the contingency, and would consequently descend at law, until the devise should take effect ; — it may be answered, first, that the construction in question, if otherwise well sustained, would not be thereby defeated ; and, secondly, that the devise might be construed as a gift to the several persons for life, as tenants in common, and, upon the death of either, then to the two survivors ; in which case, the three would take as tenants in common with benefit of survivorship in the two, who should survive.   2 Jarman on W. 645, and cases there cited.   *Doe* v. *Abey,* 1 M. & S. 428.

2.  The next question is, what estate did Martin Brimmer take under the will of Mary Ann Brimmer.   The testatrix survived George W. Brimmer.   Her will was made March 14th, 1835 ; the codicil was added September, 1837 ; and the death of G. W. B. took place in 1838.   The estate, there · fore, if any, which she derived under his will, including the wharf estate, was acquired by her after the making of her will ; and the question is whether such after acquired real estate passed by it.

The rule of the common law, according to which after acquired real estate would not pass under the will, but would descend to the heir at law, was the law of this commonwealth, until the revision of the statutes, and still prevails, except so far it has been altered by statute.   The will was made before the revised statutes went into operation.

By c. 62, § 3, it is provided, that "any estate, &c., in lands, acquired by the testator, after the making of his will, shall pass thereby, in like manner, as if possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator."

The will is not within the operation of the statute, because the latter is prospective only.   *Brigham* v. *Winchester*, 1 Met. 390.   But if the codicil, which was made in 1837, after the statutes went into operation, should be held to have abrogated this objection ; — then the question is, whether there is clearly and manifestly in the will an intent to pass after acquired real estate.

The intent must be sought in the will itself ; and, for this purpose, the residuary clause alone furnishes any evidence. That clause was written in 1835, before the revision of the statutes, and, consequently, at a time, when it was not in the power of the testatrix, or of any one, to devise after acquired real estate ; and it is not to be supposed, that she then intended to convey what could not by law be conveyed.   When the codicil was added, in 1837, the law had been changed, in this respect, but the testator then inserted no expression of her intention to convey after purchased estate ; nor did she, after the decease of G. W. B. in 1838, when she had acquired further real estate, make any addition to her will, expressing any such intention.   The fact, that the testatrix, after she had been empowered by law to pass after acquired real estate, by expressing her intention to do so, in her will, made no addition to a will, which was clearly inoperative for that purpose, is quite significant if not conclusive to show that she had no such intention.

But, further, the intent must not only appear by the will ;

it must clearly and manifestly appear, and is not to be presumed or inferred. It must appear, affirmatively, that the testatrix had in her mind, at the time of making her will, or, at all events, at the time of making the codicil, an intent to dispose thereby of such after acquired estate. But neither the will nor the codicil contains a word, or even an allusion, indicating any such idea or intention.

*W. Sohier & J. Lowell,* for the defendant.

1. It is argued, on the authority of the rule laid down by Fearne, (2 C. R. 136), that, as the will of G. W. B. contained no distinct gift to the whole class (the testator's brother and sisters) immediately preceding the devise to the survivors, the interest was necessarily contingent; and, consequently, that the devisees could only take in the character of survivors. This argument takes for granted, that there is no devise to the whole class; which is in fact the question at issue.

The will is to be construed according to the intent, so far as it can be ascertained from the instrument itself; and if the intent can be clearly perceived, the court will give effect to it, even though the terms, in which it is expressed, might otherwise have a different legal operation. *Homer* v. *Shelton,* 2 Met. 195; *Thellusson* v. *Woodford,* 4 Ves. 329; *Perry* v. *Woods,* 3 Ves. 208. And equity will construe a will against express words to effectuate such intent. *Drayton* v. *Drayton,* 1 Dessaus. 324.

The will being evidently drawn by the testator himself, it is fair to presume, from that fact, in connection with the fact that one sister " of his brother and sisters " had died, that he used the word " survivors " in its natural and popular sense, meaning those of his " brother and sisters " who were then living.

If it should be inferred, however, that the testator did not intend an absolute gift to the three persons named, but that he survivors only should take; it seems to be clearly settled, that all who survive the testator, and fall within the description of brother or sister, would take equally as tenants in

common. Such an interpretation is well sustained by the rules of law.

This is a general devise of the residue, which not only carries a fee, (*Kellogg* v. *Blair*, 6 Met. 322 ; *Parker* v. *Parker*, 5 Met. 134,) but implies an intention, on the part of the testator, that the objects of his bounty should take immediately upon his decease, and that his estate should then be divisible between them. *Hill* v. *Chapman*, 1 Ves. Jr. 405.

When no other time is mentioned in the will, for the devisees to take, the courts will consider it to be the time when the will takes effect, namely, at the testator's decease. *Bindon* v. *Suffolk*, 1 Peere Wms. 96 ; *Stringer* v. *Phillips*, 1 Eq. Cas. Abr. 293 ; *Taylor* v. *Langford*, 3 Ves. 119 ; *Perry* v. *Woods*, 3 Ves. 204 ; *Wadley* v. *North*, 3 Ves. 364 ; *Jenour* v. *Jenour*, 10 Ves. 562 ; *Drayton* v. *Drayton*, 1 Dess. 324 ; *Jackson* v. *Billinger*, 18 Johns. 368, 381.

When words of survivorship are used, they are to be referred to the time of the testator's decease, unless some special intent is shown to the contrary, or, unless a previous interest be given in the subject matter of the devise. *Maberly* v. *Strode*, 3 Ves. 450 ; *Russell* v. *Long*, 4 Ves. 551 ; *Cripps* v. *Wolcott*, 4 Madd. 11 ; *Brown* v. *Bigg*, 7 Ves. 279. Thus, in the case of *Swinton* v. *Legare*, 2 M'Cord Ch. 440, where a legacy was given to one for life, and, after her death, " to the survivors of " her children, it was held, that all the survivors who were living at her death would take.

The words in question were used by the testator to prevent a lapse, which might otherwise have happened by the death of either of his brother and sisters, in his lifetime ; and equity, from the earliest period, has construed such words of survivorship as introduced by a testator with that object. *Brown* v. *Bigg*, 7 Ves. 279 ; *Maberly* v. *Strode*, 3 Ves. 450 ; *Bindon* v. *Suffolk*, 1 Peere Wms. 96 ; *Roebuck* v. *Dean*, 2 Ves. Jr. 265. See also *Stewart* v. *Sheffield*, 13 East, 526 ; *Drayton* v. *Drayton*, 1 Dess. 324.

In many of the cases above referred to, the devisees or legatees were mentioned by name ; but, the distinction

11 *

though sometimes adverted to, is not deemed material ; and, although most, if not all the cases, relate to legacies, yet the rule is held equally to apply to devises. *Stones* v. *Heurtley,* 1 Ves. Sen. 165 ; *Perry* v. *Woods,* 3 Ves. 204 ; *Stewart* v. *Sheffield,* 13 East, 527.

A different construction would leave the residue of the estate undevised, until the death of one of the three devisees ; which would be contrary to the well established rule of law, " that every presumption is to be made against intestacy, where a residue is given in terms by a will." *Philipps* v. *Chamberlaine,* 4 Ves. 50 ; *Maberly* v. *Strode,* 3 Ves. 450 ; *Earl* v. *Grim,* 1 Johns. Ch. 494 ; *Fox* v. *Phelps,* 17 Wend. 393. And courts will put no construction on a will so as to create intestacy, if it can be avoided. *Wadley* v. *North,* 3 Ves. 366.

A suggestion was made, in order to obviate this result, that the devisees might " take as tenants in common with benefit of · survivorship ; " and, in support of this proposition, the case of *Doe* v. *Abey,* 1 M. & S. 428, was cited. But that case was peculiar, — turning upon its own individual merits, — and only applicable to a precisely similar state of facts. See 2 Jarman on W. 656.

If the words " survivors of " should be construed to exclude all but the two who survive the third, as is argued by the plaintiff, then it might follow, that if two of the number had died during the testator's lifetime, or could be supposed to die afterwards at the same moment, the whole residue would remain undevised ; as the single survivor is as far from satisfying the description as the three.

The cases contemplated by the rule cited from Fearne are widely different from the present. The devise here should be held, in accordance with the principles already stated, to apply to all the persons named as brother and sisters of the testator. surviving at his decease, and to refer to them · as a class, and not as survivors of a class. This construction has been given to these very words in *Swinton* v. *Legare,* 2 M'Cord Ch. 440. The general intention of the testator, to

dispose of his estate at his decease, shown by the residuary clause, ought not to be controlled by the singular expression, by which he mentions the devisees.

The view taken by the defendant is warranted by the terms of the will, and by decisions of the courts, construing similar devises in favor of classes. *Walker* v. *Shore*, 15 Ves. 122; *Daniell* v. *Daniell*, 6 Ves. 297; *Godfrey* v. *Davis*, 6 Ves. 43; *Dingley* v. *Dingley*, 5 Mass. 535; *Vanbrook* v. *Rogers*, 3 Murph. 178; *Knight* v. *Wall*, 2 Dev. & Batt. 125. And it has also been repeatedly held, that all who can answer to the description are to take, when, by the will, the testator intends the property to vest in possession. *Devisme* v. *Mello*, 1 Br. C. 468; *Matchwick* v. *Cock*, 3 Ves. 609; *Cole* v. *Croyan*, 1 Hill Ch. 322.

2. The second question is, whether the real estate acquired by M. A. B., after the making of her will, under the will of G. W. B., descended to her heirs at law, or passed by the residuary clause in her will, by force of the Rev. Sts. *c.* 62, § 3, already cited. The latter will be the case, provided it shall clearly and manifestly appear by the will, that such was the intention of the testator.

It can hardly be doubted, from the terms and provisions of the will, that the testatrix intended to make her brother Martin and her sister Eliza her sole residuary legatees and devisees. It is true, that, if she had died before the revised statutes were passed, the devise would have been inoperative as to the real estate, not from any doubt as to her intention, but in consequence of an inflexible rule of law.

The " clear and manifest intention of the testator," which is made a condition to the passing of after acquired estate, does not require the use of any particular words to denote it ; nor does it alter the rule of construction, by which courts infer an intention to dispose of other property ; but the clause was rather introduced to qualify the meaning of the word " shall," in the preceding part of the section, and to prevent it from being construed to restrict a testator from excepting

such after acquired estate from the operation of his will. This is the construction, which has been given in Illinois to an analogous statute, empowering a testator to devise "all the estate which he hath, or, at the time of his death, may have, in any lands," &c. ; under which, a devise of the "whole estate real, and personal," was held to indicate an intention to devise all the property which the testator might own at his decease, and to include lands acquired after the making of the will. *Willis* v. *Watson*, 4 Scamm. 64.

The construction, thus contended for, would leave the intent to be ascertained from the general scope of the instrument, upon well settled and familiar principles of law. To consider the residuary clause, in the present case, as ineffectual to pass the estate, would make the interpretation of that clause depend upon the nature of the property which the testatrix happened to have, rather than upon the plain and ordinary meaning, or the well established legal effect and operation, of the words which she has made use of; and, thus, the meaning of a testator would be inferred, not so much from the words of his will, as from the accidental character of his investments. See *Thellusson* v. *Woodford,* 4 Ves. 329 ; *Perry* v. *Woods*, 3 Ves. 208.

It is clear, that the testatrix did not mean to die intestate, and the cases already referred to show, that every presumption is to be made against intestacy, especially when the will contains a residuary clause.

If the statute provision were so entirely prospective in its operation, as to include only wills subsequently made, the making of the codicil would give the same effect to the will, in the present case, as if it had been made at that time *Washburn* v. *Sewall*, 4 Met. 66. See also *Hill* v. *Chapman*, 1 Ves. Jr. 405. But, even if the codicil had never been made, the statute should be construed to take effect upon the original will alone, the object of it being to give effect to and not to defeat the intention of the testator.

Similar questions have arisen under the statutes of New

York relating to devises, and have been decided in favor of the construction contended for. See *De Peyster* v. *Clendining*, 8 Paige, 295; *Bishop* v. *Bishop*, 4 Hill, 138.

FORBES, J. This case comes before the court upon an agreed statement of facts. Two questions only have been argued, and submitted for our decision. The first question is, whether Mary Ann Brimmer took any estate under the will of George W. Brimmer. This will is exceedingly brief, and was, apparently, written by the testator, without the aid of professional advice. The first clause contains a bequest of all the estate of the testator in Brewer, in the state of Maine, to the surviving children of his deceased sister, Susan Inches. Then follows a bequest to George B. Sohier. The next and last clause of the will is as follows: " The residue of my real and personal estate in Boston, North Carolina, and elsewhere, I give to the survivors of my brother and sisters, Martin Brimmer, Eliza O. Brimmer, and Mary Ann Brimmer." All the residuary devisees named in the will survived the testator; and after his death, Mary A. Brimmer died, leaving the plaintiff and Martin Brimmer her survivors. · Upon this state of facts, the plaintiff contends that Mary A. Brimmer took nothing under the will; that the residuary clause created a devise upon a contingency: that it was a devise to the two out of the three persons named who might survive the third. This construction is based upon the technical meaning and force of the words " to the survivors of my brother and sisters; " and it ought not to be adopted by the court, if it would defeat the obvious intention of the testator. There can be no reasonable doubt of the intention of the testator, that in case but one of the devisees named in the residuary clause should survive him, the estate should vest in such sole survivor. But upon a strict and literal construction of these words, if two of the three had died during the lifetime of the testator, the survivor would not take. It is not a bequest to the survivor, but to persons who shall answer the description of survivors. The construction contended for would give to the devise a very

extraordinary and anomalous character. It is evident that the three devisees were equally objects of the testator's bounty, in case they should survive him; but this construction would select two out of the three, by lot, as it were, and would give the estate to them upon a contingency which might happen during the lifetime of the testator, or not until many years after his decease, or which, indeed, might never happen. If the object of the testator had been, as was suggested, to preserve the property in his family, no good reason is perceived why it was not given to the ultimate survivor. It may be further remarked, in this connection, that although the contingency upon which the estate depended might not happen for an indefinite period after the death of the testator, yet he made no disposition of the estate for the time intervening between his death and the happening of the contingency. If it be said that the devise should be so construed as to give the estate to the last survivor, it may be replied that such a construction would be doing greater violence to the language of the will, than to hold the devise to be unconditional. The devisees are expressly named; their sister Mrs. Inches had previously deceased; and the expression "the survivors of my brother and sisters" was a correct description of the devisees, in the then state of the family. It is at least as probable that these words were used by the testator by way of description, as that they were used for the purpose of creating a survivorship of the character suggested by the plaintiff. Looking at the language of this clause, without reference to other parts of the will, we perceive no impropriety in transposing the members of the sentence, and in reading the clause in this manner : "The residue of my real and personal estate, &c., I give to Martin Brimmer, Eliza O. Brimmer and Mary Ann Brimmer, who are the survivors of my brother and sisters."

Upon the construction contended for by the plaintiff, a tenancy in common would be created between the two survivors, but not necessarily at the time of the testator's death. We are satisfied, however, that the object of the testator was

to provide against the death of one or more of the devisees during his lifetime, and that he intended to create a tenancy in common between all the devisees who should survive him, with the right of possession immediately after his decease. Upon this construction of the will, which we believe to be the only one that will give effect to the intention of the testator, at his death Mary Ann Brimmer became a tenant in common with the other residuary devisees.

By the will, then, of George W. Brimmer, Mary Ann Brimmer (who also died testate) took an undivided third part of the residue of the real and personal estate of the testator; and the second question is, whether, by her will, her interest in this real estate passed to Martin Brimmer, the defendant's testator.

George W. Brimmer died in 1838. The will of Mary A. Brimmer was made in 1835, and the codicil in 1837, so that her interest in the estate of George W. did not vest until after the making of the codicil. The question is, therefore, whether by her will this after acquired real estate passed to her devisee. By a well known rule of the common law, after purchased real estate did not pass by a will. And this rule was enforced so strictly, that a will was held to be inoperative upon real estate of which the testator was the owner at the time of the making of the will, and afterwards sold, then repurchased, and died seized. The rule required that the testator should be seized at the time of the making of his will, and that he should continue seized, without interruption, until his death. The legislature became satisfied that this rule tended to defeat the intention of testators, and, consequently, it was changed by the revised statutes, which went into operation on the first day of May, 1836. It was insisted, on the part of the plaintiff, that this will, having been made in 1835, did not come within the operation of the revised statutes, although the testatrix survived three years and upwards after the change in the law took place. But whether there be any force in that objection or not, we do not think it applies in the present case. In 1837, the testa-

trix, by the codicil, ratified, confirmed and republished the will, the effect of which was, to give the same force to the will as if it had been written, executed and published at the date of the codicil. In this manner the will is brought directly within the operation of the revised statutes, and is to be construed according to the provisions of that code.

The Rev. Sts. *c.* 62, § 3, provide that "any estate, right or interest in lands, acquired by the testator, after the making of his will, shall pass thereby in like manner as if possessed at the time of making the will, if such shall clearly and manifestly appear, by the will, to have been the intention of the testator."

It is not supposed that the intensives "clearly and manifestly," as used in this section, can have any well defined or precise effect in the construction of wills. They are too vague and indeterminate to form a rule of much practical use. The statute requires, undoubtedly, that the intention of the testator should be fairly inferable from the will, but it does not require an express declaration. The intention is a matter of deduction or inference from given premises. Suppose a testator to express his desire (as is sometimes done in the introductory part of a will) to dispose of all such property, as he might leave at his decease, and, after specific bequests, to devise all the residue of his estate; can it be doubted, that after purchased land would pass by such a will, and yet the operative words of the devise might be satisfied by restricting them to lands which the testator owned at the time of making the will? Under this section, the true question seems to be, to what period of time was the attention of the testator directed? Was it fixed exclusively upon the condition of his estate at the time of making the will? or did he contemplate the possibility of future changes, and intend to embrace within the scope and operation of his will his whole estate at the time of his decease? In other words, did he intend to die testate as to all the property which he might leave, or was he content to die intestate as to a part, and leave it to be distributed according to law?

The provisions in this will, to which the attention of the court has been directed, are as follows: " One moiety of all the residue of my estate, real, personal and mixed, whereso-ever the same may be situated, I devise and bequeath unto my sister Eliza O. Brimmer, to hold during her natural life."

" All the residue of my estate I devise and bequeath unto my brothers, George Watson Brimmer and Martin Brimmer, their heirs and assigns forever, in case they both survive me ; otherwise my will is, that the brother who shall survive me shall take the whole and entire residue of my estate."

Upon what estate did the testatrix intend that these clauses should operate ?  Did she intend to limit them to the estate owned by her at the republication of the will ? or did she intend to embrace within their operation all the property which she might own at her death ?

Every testator is aware that his will cannot take effect until after his death ; that until that event all his property remains at his disposal ; and, ordinarily, it is from that period that his intention to settle its final destination may be pre-sumed.   The rule of the common law, before referred to, is purely artificial ; it did not grow out of the subject naturally or spontaneously, but, on the contrary, it is inconsistent with the terms, in their popular acceptation, in which a residuary devise is commonly made.   And wherever there is a devise of the whole estate, or of all the residue of the estate, of a testator, there being both real and personal estate upon which the will may operate, an intention to give after acquired real estate may, perhaps, be justly inferred, unless there be some indication of a different intention to be found in the will. *Wait* v. *Belding*, 24 Pick. 136, 137.   Such is the effect of a will upon after acquired personal property ; and, without the aid of professional advice, few testators are aware, that, in this respect, there is any distinction between personal prop-erty and real estate.   In the present case, there is a devise to the plaintiff, for life, of one moiety of *all the residue* of the estate of the testatrix, real, *personal* and mixed : then follows a devise to the brothers of *all the residue*, including the other

-moiety of the estate, real, *personal* and mixed, together with the remainder after the termination of the plaintiff's life estate. The arrangements made by the testatrix were, therefore, prospective, looking forward to an event which might not happen until many years after her decease. And in this connection, the concluding paragraph is, we think, very significant. The estate is given to the brothers in case they should both survive the testatrix; " otherwise, my will is, that the brother who shall survive me shall take the whole and entire residue of my estate " — language as comprehensive and as emphatic as could well be used, and, as it appears to us, clearly intended to embrace the residue of all the estate which the testatrix should leave at the time of her death. In contemplating the event of survivorship, the mind of the testatrix was carried forward to a state of things which would exist at the period of her decease ; and it is with a reference to that period that the disposition of her whole property is made. It is the opinion of the court, that the testatrix did intend not to die intestate as to any part of the estate which she might leave, and that the after acquired real estate did pass, by her will, to the surviving devisee, Martin Brimmer.