**FITZGERALD et v BELL et**

Probate Court, Montgomery Co

No 87546. Decided Jan 24, 1941

424

Roy G. Fitzgerald, Sr., Roy G. Fitzgerald, Jr., Thomas H. Ford, James D. Herrman, John H. Shively and Oscar J. Beringer, of Dayton, for plaintiffs.

Ellis P. Legler, Geo. R. Murray, Albert J. Dwyer, Bessie D. Moore, of Dayton; Henry E. Beebe, of Cincinnati, and Wayne F. Lee, of Dayton, for various defendants.

## OPINION

By WISEMAN, J.

This is an action to construe the will of Mary A. Crawford, deceased. The issue is whether or not the will passed after-acquired property. The testatrix executed her will on August 10, 1931, and died on October 16, 1939.

The evidence shows that at the time of the execution of her will, the testatrix possessed property of the approximate value of $10,000.00, and in addition thereto a claim against her brother in the sum of $35,000.00 on which the accumulated interest amounted to more than the principal sum.

In February of 1935 the testatrix received as her distributive share from the estate of her cousin, Alice K. Fuller, whose estate was administered in Uniontown, Pennsylvania, the sum of $665,573.99. The evidence does not indicate that the testatrix had any knowledge, at the time she drafted her will in 1931, that she might be a beneficiary under the will of Alice K. Fuller. After the testatrix received this large inheritance from the estate of her cousin, she made no effort to change her will.

The estate of the testatrix shows a total appraisement of $545,304.79, the greater portion of which consisted of assets which she received from the estate of her cousin.

The particular items of the will relevant to the issue presented are as follows:

"Second: My daughter, Madeleine O'Brien, being well provided for, I direct that my estate, whether real, personal or mixed, except my silverware and jewelry, be divided into two equal parts. I give, devise and bequeath one of these parts to my son, George Springer Crawford, to be his and his heirs and assigns, absolutely and forever.

"The other one-half part of my estate I give, devise and bequeath to The Merchants National Bank & Trust Company, of Dayton, Ohio, or to its successor, to be held by it in trust during the lifetime of my son, William H. Crawford. It shall invest and re-invest said trust estate and funds and pay to my said son, William H. Crawford, the sum of Sixty-five Dollars ($65.00) on the first day of each month, and on the first day of April and October in each year it shall pay to my said son the additional sum of One Hundred Dollars ($100.00).

"If the income from my said trust estate is insufficient to make these payments, then the necessary part of the corpus of said half of my estate may be used for this purpose. This provision for my said son may neither be assigned or incumbered and is inalienable.

"My said son shall have no right, title or interest in or to the corpus of my said trust estate or in or to the income therefrom. If and in the event he should attempt to sell, assign, hypothecate, pledge or give away the income to be received by him, then my said trustee or its successor or successors, shall have the right to refuse further payments.

"My said trustee, within three months after the death of my said son, William H. Crawford, and after the payment of his funeral expenses, shall pay to my said son, George Springer Crawford or to his heirs, all of my said trust estate which shall then belong to him and/or to his heirs and assigns, absolutely and forever.

* * *

"Sixth: My dear brother, L. S. Cunningham of Pittsburgh, Pennsylvania, being now indebted to me in the sum of $35,000.00 and an accumulation of interest, it is my wish that, the interest being fully paid, no attempt be made to force collection of any amount of the principal within a period of one year nor, if adequate security be given, within a period of two years after my death."

The instrument contains no express provision relative to the disposition of after-acquired property, and there is no general residuary clause. The principal question for the court to determine

is whether or not the after-acquired property passed under the provisions of this will, or descended as intestate property to her next of kin.

The next of kin who would benefit by the passing of the after-acquired property under the intestate laws, contend that inasmuch as the testatrix had no knowledge at the time she executed her will that she was a beneficiary under the will of her cousin, it could not have been her intention to dispose of the after-acquired property; that the plan for distribution of her property, as set forth in the will, discloses an intention to distribute a small estate, one-half of which was to be held in trust and was expected to yield less than $1,000 per year for the use of her son William H. Crawford; that §10579 GC which was in effect on the date of the execution of the will, controls; that within the meaning of §10579 GC the testatrix, in her will, did not manifest an intention to dispose of the after-acquired property and that consequently such property descends to her next of kin under the intestate laws.

On the other hand, it is contended by those who are favored by the will that the testatrix, in item two, disclosed her intention to dispose of her entire estate, which was effectual to pass after-acquired property; that it is not essential, in order to pass after-acquired property, that the testatrix should have knowledge of or foreseen the acquisition of such after-acquired property; that the will speaks as of the date of death of the testatrix and that §10504-71 GC, which was in effect on the date of the death of the testatrix, controls.

The court has investigated the numerous cases cited by counsel in their briefs, but can only refer to a few of the authorities cited. The court recognizes the significance of the legal question involved. It has searched for but has been unable to find any reported case decided since the enactment of §10504-71 GC, in which the precise question was involved.

The cardinal rule for the court to follow in a will construction suit is to ascertain the intention of the testator and give effect thereto. The testator's intention must be ascertained from the language used in the will. The language in the will must be construed in the light of the circumstances under which the testator used it, and must be given a liberal construction to give effect to the testator's intention. Wagner v Schrembs, 44 Oh Ap 44.

In will construction cases the court can not place much reliance on precedents; adjudicated cases in which similar words are construed do not greatly assist the court in determining the intention of the testator. Thompson on Wills, 2d Ed., §212; Anderson v Gibson, 116 Oh St 684, 689. In order to determine the intention of the testator, the court must place itself, so far as possible, in the position of the testator and take into consideration the circumstances surrounding him when the will was executed. The court may take into consideration the surrounding circumstances, if they are relevant, in order to comprehend the sense and purpose of the language used, and the scheme of disposition in the mind of the testator at the time he made his will. The court may consider the testator's mode of living and habits of thought; his relations to or associations with the objects of his bounty; their age, condition, dependence, and the like; the court has the right to take into consideration the motives which could reasonably have actuated the testator in the disposition of his property. Thompson on Wills, 2d Ed., §217; 69 C. J. 63.

Thus, in accordance with the law, this court took testimony relative to certain facts and circumstances surrounding the execution of the will by the testatrix; the extent of her estate; her associations; her solicitude or lack of solicitude for those who would be the natural objects of her bounty; her attitude toward her daughter and mat-

ters which may have motivated her in excluding her daughter from participating in her estate. All of this testimony was admissible under the issues in this case. Testimony was proffered, which consisted of statements made by the testatrix to her counsel relative to the advisability of executing a new instrument, at and after the time she received her distribution from her cousin's estate. The court considered this testimony to be incompetent and excluded it on the ground, first, that such statements were privileged communications and, second, that the well-settled rules of evidence render inadmissible statements made by the testatrix relative to the disposition of her property. The court confirms this ruling.

It is contended that in a will construction suit the intention of the testator is determined by giving effect to the law in existence on the date of the execution of the will. It is also contended that the will under construction speaks as of the date of death, and that the law in effect on that date controls. A will does not speak as of the date of death for all purposes. The law in effect on the date of the execution of a will controls for certain purposes, and the law in effect on the date of death controls for other purposes. In the case at bar, to what extent does the law in effect on the date of the execution of the will, and the law in effect on the date of death, apply to the issue herein presented? The text writers and the courts have discussed this proposition, but the line of demarcation is not clearly defined.

Let us examine the statutory law in effect on the two respective dates. On the date of the execution of the will, §10579 GC was in effect, which provided:

"Any estate, right or interest, in lands or personal estate or other property acquired by the testator after making his will, shall pass thereby, as if held or possessed at the time it was made, if such manifestly appears by the will to have been his intentions."

Subsequent to the execution of her will by the testatrix, but prior to the acquisition of her inheritance from her cousin's estate, §10504-71 GC became effective. This section provides:

"Any estate, right, or interest in lands or personal estate or other property of which the decedent was possessed at his death shall pass under the will unless the will manifests a different intention."

It will be observed that under the former section, after-acquired property passed under the will only if it manifestly appeared that the passing of such property was the intention of the testator. Under the present section, after-acquired property passes under the will unless the will manifests a different intention. In other words, the enactment of §10504-71 GC reversed the presumption which existed under Sec. 10579 GC, in favor of passing all after-acquired property, "unless the will manifests a different intention." The court must determine to what extent these sections are applicable to the issues in this case.

A well-settled rule of construction is that a testator is presumed to know the law in existence on the date of the execution of his will. He is charged with knowing the legal effect of his testamentary acts. McColm v Orebaugh, 40 Oh Ap 238; Nelson v Minton, 46 Oh Ap 39. For this reason, the law in effect on the date of the execution of his will is always taken into consideration in determining the intention of the testator. In 69 C. J. 49, it is stated:

"Unless a contrary intent appears in the will, which must be determined

as a matter of fact and not on precedent, the law existing at the time the will was executed will govern in determining the testator's intention as between the laws in force at different times in the same jurisdiction, but the operative effect of the will and the rights of the parties thereunder, are to be determined by the law in force when the rights of the parties accrue, and this ordinarily is the law existing at the time of the testator's death."

On page 50 it is stated:

"And where by a change of statute words have a different meaning than if used in a will executed under the new law, and no longer expresses the intention of the testator, the will must be construed in accordance with the law at the time of execution."

In Ohio, it has been held that a will is ambulatory in its nature, and that the law in effect on the ▆ date of death determines the **operative effect** of the testator's intention. **Judy v Trollinger, 110 Oh St 576, 583; Reynolds v Reynolds, 9 Oh Ap 337, 346; Fifth-Third Union Tr. Co. v Davis, 4 OO 455, 458; Ridenour v Callahan, 8 C. C. (N.S.) 585; 41 O. Jur. 276.** Consequently, in determining the intention of the testatrix, this court must take into consideration the statutory law in existence at the time she executed her will; and in determining the operative effect of this intention the court must apply the statutory law in effect on the date of of her death.

In the case at bar, the issue relates to the passing of personal property. At common law the rule was that as to lands a will spoke as of the ▆ date of its execution, and after-acquired real property did not pass; but as to personalty the will spoke as of the date of death and after-acquired personal property passed. **41 O. Jur. 49; 68 C. J. 492; Shouler on Wills, 6 Ed. 845.** A prominent

feature of the English law was to favor the heir and prevent disinherison. The courts of Ohio very early in the history of this state refused to make this distinction. **Smith v Jones, 4 Ohio 115, 122.** Also, **41 O. Jur. 296.** In **McCall, Admr. v Jones, 2 Ohio Dec. Repr. 704,** the court on page 706 say:

"It is equally well settled that a bequest of personalty refers to the state of the property at the testator's death, whether owned at the date of the will or acquired afterwards." (Citing **Smith v Jones, supra**).

The legislature of Ohio has enacted many different statutes governing the disposition by will of after-acquired property. We are required to consider only the last two enactments. Under **§10579 GC,** personal and real property were placed in the same category. The statute operated in derogation of the common law with respect to after-acquired personal property and therefore should be strictly construed against those seeking to take advantage of its provisions with respect to after-acquired personal property. **Sec. 10504-71 GC** reversed the presumption with respect to both after-acquired personal and real property, the effect being to declare the common law with respect to after-acquired personal property, and in derogation of the common law with respect to after-acquired real property. Consequently, this section should be liberally construed in favor of those seeking to take advantage ▆ of its provisions with respect to after-acquired personal property.

Now, to what extent do these two sections apply to the issues in this case? **Sec. 10579 GC** controls only to the extent that its provisions must be considered by the court in determining the intention of the testatrix. It has no other controlling effect. **Sec. 10504-71 GC** being in effect on the date of death of the testatrix, controls the operative effect of the intention of the testatrix

as gathered from the will in light of the provisions of §10579 GC which were in effect on the date of the execution of the will. The provisions of §10579 GC, however, have little or no effect in determining the intention of the testatrix. There is no particular provision or words used, in her will, which indicate that she had in mind any particular statutory provisions at the time she executed her will. The statutory provisions in effect on the date of the execution of the will would be given more force in determining the intention of the testatrix if it were shown that she made certain disposition of her property or used certain words in her will to harmonize with the then existing statutory law. In 69 C. J. 66, in discussing this proposition of law the statement is made that the court may take into consideration "statutory provisions which the language of the will shows the testator had in mind when he executed his will." Therefore, in the case at bar, while the court must consider the provisions of §10579 GC, in determining the intention of the testatrix, it has little or no application to the words used in the will. Page on Wills, 2d Ed., page 1440.

Similar statutory provisions have been given little or no effect in will construction suits. In Carrell v Carrell, 24 C. C. 416, which was a suit to quiet title to a piece of real estate and involved the construction of a will wherein the testator at the time he executed his will owned the undivided one-half interest in a piece of real property on which a store was situated, and subsequently purchased the other undivided one-half interest and additional tracts adjacent thereto, and before his death built a new business block on the entire tract, a question arose as to whether the after-acquired property passed under the terms of his will, in which he provided that "All right, title and interest in the store property," should be given to his children. The court held:

"The words 'clearly and manifestly' as used in §5969 Rev. Stat. should receive but little consideration in construing wills; and where it reasonably appears from the will that the testator intended to divide after-acquired lands, the intention should be given effect nothwithstanding these intensives."

On page 418 the court, in passing on the statutory meaning of the words "clearly and manifestly", cites the case of Brimmer v Sohier, 55 Mass. (1 Cush.) 118, 132, which held:

"It is not supposed that the intensives 'Clearly and manifestly', as used in this section, can have any well defined precise effect in the construction of wills. They are too vague and indeterminative to form a rule of much practical use. The statute requires, undoubtedly, that the intention of the testator should be fairly inferable from the will, but it does not require an express declaration. The intention is a matter of deduction or inference from given premises."

In **Farrar v Fallestine, 4 C. C. 235,** (1889), Judge Shauck held that such intensive words can receive no precise effect in the construction of wills. The courts have repeatedly held that words which would not be considered sufficiently clear or manifest to show an intention to pass after-acquired realty, will pass after-acquired personalty. See **Newton v McKinstry, 16 C. C. (N.S.) 219.** So that, if the testatrix in the case at bar manifested an intention to pass after acquired property, in light of §10579 GC, nothing in §10504-71 GC would disturb such an intention, as the latter section favors rather than disfavors the passing of after-acquired property.

The court coming now to interpret the particular provisions of the will of the testatrix, finds that in item two she provided: "I direct that my estate, whether real, personal or mixed, * * * be divided into two equal parts." In

the use of these words, did she intend to pass all property which she might possess on the date of her death, or did she intend to pass only such property as she possessed on the date of the execution of her will?

The word "estate" has been defined in 21 C. J. 913 as follows:

"While in its primary and technical sense the term 'estate' refers only to an interest in land, yet it has acquired a much wider import and application, being applied to all property of every description, including personal property as well as realty, and in its most extreme sense signifying everything of which riches or fortune may consist. It has been said to denote a man's whole financial status or condition, the aggregate of his interest and concerns, so far as regards his situation with reference to wealth or its objects, including debts and obligations, as well as possessions and rights."

In Thompson on Wills, 2d Ed. §236, the meaning of the word "estate" is discussed. The text concludes as follows:

"* * * So when used in a will to describe property devised or bequeathed, the word 'estate' will include all the property of the testator, both real and personal, unless the term is limited in meaning by the context."

On page 330 it is stated:

"Generally, bequests of personalty pass everything which answers the description thereof at the death of the testator, unless a different intention is shown by the context."

In 28 R. C. L. 236, it is stated that:

"The word 'estate' in a will carries everything, unless restricted by particular expressions."

The court concludes that the word "estate" as used by the testatrix in her will, was used in the broadest and most comprehensive sense. There are no words in the will which indicate that she intended to use the word "estate" in a restricted sense. This conclusion is supported by the fact that following the use of the word "estate" she used the words "whether real, personal or mixed." At the time of the execution of her will, the testatrix possessed no real property. The provision in her will with respect to the disposition of real property could only refer to after-acquired real property. Consequently, she shows her intention to dispose of not only the property which she possessed on the date of the execution of the will, but property which she might thereafter acquire. The provision of the will under construction is not specific, but general, in its terms. It is clear that she intended to dispose of all her property which she then possessed or would thereafter acquire.

Does the fact that the testatrix, at the time she executed her will, had no knowledge that she would receive a large inheritance under her cousin's will, have any legal effect on the passing of such after-acquired property? We do not think so. It has been held that if a reasonable construction of the will shows an intention to dispose of all the estate, it will pass after-acquired property and it is not necessary to show that the testator anticipated the acquisition of such property, or had foreseen the nature or source of such property. In Farrar v Fallestine, supra, Judge Shauck on page 238 holds:

"In all these cases, subsequently acquired lands were held to pass under wills which made apparent the testator's intention to dispose of all his property, although the subsequent purchase of lands did not appear to have been in his mind, and no apt words were used to extend the testamentary provisions to such lands. They belong

to a class of cases which strikingly illustrate the extent to which all other considerations must yield to the intention of the testator as that may be gathered from the entire will."

In **Blacker v Litten, 10 Oh Ap 180,** our own Court of Appeals reviewed numerous Ohio cases on the construction of wills in which similar words have been used, and on page 186 say:

"* * * The testatrix evidently intended by the words employed in the will to dispose of the estate owned by her at her death. The fact that she might subsequently acquire property, even if not expected at the time the will was executed, does not create an exception from the express terms of the devise. No one can know in advance what property may be subsequently acquired. Where a will clearly shows an intention to dispose of after-acquired property, it is not important that the testator did not foresee or judge the source or nature of the property. Farrar v Fallestine, supra."

In determining the intention of the testatrix in this case, the court is assisted by a well-established rule of construction that she was not presumed to intend to die intestate with respect to any of her property. A court of equity will always put such a construction upon equivocal words as will prevent such a result. Farrar v Fallestine, supra; Shouler on Wills, 6th Ed., §887; **Collier v Collier, 3 Oh St 369; Pruden v Pruden, 14 Oh St 251; Wright v Masters, 81 Oh St 304; Anderson v Gibson, 116 Oh St 684, 691.**

The court finds that the testatrix, in item two of her will, intended to pass all of her estate, whether owned at the time of the execution of the will or acquired thereafter; and to divide the same into two equal parts, one part of which was to be given to her son George Springer Crawford, and the other part to the Merchants National Bank & Trust Company, in trust for the use of her son William H. Crawford. It is true that at the time she executed her will she possessed a small estate. She provided that her son William H. Crawford should receive $65 on the first of each month and $100 additional twice each year, from that portion of her estate which was placed in trust for his use and benefit. She provided that should the income from said trust estate be insufficient to make these payments, then the principal sum of said estate may be used for that purpose. It is contended that this provision indicates that the testatrix did not intend to pass after-acquired property. This provision, together with the provision relative to her brother's indebtedness, indicates an uncertain state of mind of the testatrix relative to the estate she might leave for distribution.

The estate of living persons is always subject to great fluctuations in value, changes in the character of the investments, and the enhancement or depletion thereof, which may materially affect the distribution of the estate under the provisions of the will.

Since the testatrix died possessed of a large estate, reasonable persons may question her motive for not distributing her estate more fairly among her living children and the children of a deceased child. However, with respect to her daughter, the evidence shows that for some years prior to the execution of her will, and even subsequent thereto, there was an estrangement between the testatrix and her daughter which the court has a right to believe motivated her in not making any provision for her daughter in her will. Furthermore, the court has a right to presume that this same motive actuated the testatrix in making no provision for her daughter by executing a new will. There is more reason for the court to conclude that she purposely intended that the after-acquired property should be distributed to her two sons as provided for in item two of her will, than that she intended to die intestate with respect to the after-acquired property. The law is that one

who executes a will is never presumed to intend to die intestate with respect to any portion of his property. In the case at bar, the words used in the will are so broad and comprehensive that to hold that she intended to die intestate with respect to the after-acquired property would do violence to what appears to be the clear and manifest intention of the testatrix.

The court finds that the testatrix intended to pass her entire estate, and such intention is as effectual in its operative effect to pass a half-million dollars worth of after-acquired property, as a thousand dollars worth of after-acquired property. The issue in this case seems to be complex only because the value of the after-acquired property is many times greater than the value of the property which she owned at the time of the execution of her will. Had the testatrix received only a few thousand dollars from her cousin's estate, in all likelihood no question would have been presented to the court.

The court has considered the relationship between the testatrix and her daughter, and has considered the motive which may have prompted the testatrix to leave no part of her estate to her daughter; however, the court is not permitted to question her motive, or whether the distribution of her estate is fair and equitable. In construing the will of the testatrix, the court has placed such a construction upon it which neither adds to nor takes from any of its provisions; it has not attempted to draw a new will for the testatrix and make such distribution of her estate as might seem more just and equitable. The fact that the two beneficiaries for whom she was most solicitous receive a larger inheritance than she had contemplated, in law is not a sufficient reason to justify the court in attempting to effect some other distribution through the means of a will construction.

We have found the law to be, that if a fair and reasonable construction of the will indicates that the testatrix intended to distribute all of her property which she might own at the time of her death, the fact that she had no knowledge of the future acquisition of a large inheritance given to her by her cousin, will not prevent the intention of the testatrix operating on the after-acquired property. The fact that the testatrix did not contemplate acquiring a large inheritance does not weaken the conclusion, drawn from the entire will, that she manifested an intention to make a complete disposition of all her property which she possessed on the date of her death.